[No. H031594. Sixth Dist. Sept. 26, 2008.]

HEWLETT-PACKARD COMPANY, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
ED RUTLEDGE et al., Real Parties in Interest.

Drinker Biddle & Reath, Michael J. Stortz and Rodney M. Hudson for Petitioner.

No appearance for Respondent.

Green Welling, Robert S. Green, Jenelle Welling; Kershaw Cutter & Ratinoff, William A. Kershaw and Stuart C. Talley for Real Parties in Interest.

## OPINION

**RUSHING, P. J.**—Hewlett-Packard Company (HP) petitions for a peremptory writ of mandate directing the trial court to vacate an order certifying a class in this action, which alleges that HP's Pavilion series notebook computers suffer from a manufacturing defect. HP contends that the trial court erred in certifying the class, because under the principles of *Daugherty v. American Honda Motor Co., Inc.* (2006) 144 Cal.App.4th 824 [51 Cal.Rptr.3d 118] (*Daugherty*), this case does not meet the requirement of community of interest for class certification.

### FACTUAL AND PROCEDURAL BACKGROUND

In April 2002, plaintiff I Braun Degenshein purchased a ZT1175 (version 4.0) model notebook computer. He experienced display screen visibility problems with the computer six months after he purchased it. He joined in this lawsuit against HP after it had been filed in the Superior Court of Santa

Clara County.[1] The complaint alleged that HP had marketed and distributed Pavilion series notebook computers, knowing that the computers had defective inverters that could potentially cause dim displays, but without disclosing such defects to consumers; the complaint asserted causes of action for violation of the unfair competition law (UCL; Bus. & Prof. Code, § 17200 et seq.), violation of the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.), breach of express warranty and "unjust enrichment."

The display screen of notebook computers consists of a liquid crystal display and other component parts, including an inverter located within the chassis at the bottom of the display screen assembly. The inverter has two functions in the display screen: to amplify electricity received from the motherboard to illuminate the backlight; and to regulate the flow of electricity to the backlight so that the screen remains illuminated. A faulty inverter can result in a dim or darkened display screen. A dim display in a notebook computer can also be caused by other factors, such as liquid spills, customer abuse, and software incompatibility. In order to determine the type of inverter installed in any given notebook computer, the display screen must be disassembled to allow inspection of the inverter.

HP Zinfandel 3.5 and 4.0 notebook computers contain inverters from many different suppliers, including TDK and Ambit, two Japanese companies. The manufacturer of the inverter cannot be determined by the serial number of the individual computer; rather, the display must be disassembled to inspect the inverter itself.

This case involves some Zinfandel 3.5 and 4.0 notebook computers that contain inverters manufactured by TDK and Ambit that are faulty, causing dim and darkening display screens.

In August 2005, plaintiffs filed a motion for certification of a class consisting of all persons and entities who own or owned certain HP computers, listed by product number, "who contacted HP about a lack of visibility of the display screen." In support of this motion, plaintiffs presented evidence of two service notes dated April 15, 2002, and November 11, 2003, that were issued by Compal, the Taiwan computer manufacturer that manufactured the Pavilion notebook computers that were the subject of the suit. The service note dated April 15, 2002, referred to a specific type of inverter manufactured by TDK. The TDK inverters were used in some of the Zinfandel 3.5 model notebooks. This service note stated that certain Pavilion notebooks returned for repair for no backlight were found to have an inverter fuse open or "blown" leading to no backlight of the display screen. The service note called

---

[1] The original complaint was filed by plaintiff Ed Rutledge on June 12, 2003.

for the service center to open the display screen to see if the computer contained the TDK inverter and to replace it with a new and different inverter, manufactured by Ambit.

The November 11, 2003 service note referred to a specific type of inverter manufactured by Ambit used in some Zinfandel notebook computers. The specific inverters were found to have solder cracks, potentially leading to no backlight of the display screen, or to blinking on the display panel. The service note called for replacing the inverter with a reworked version of the same inverter.

HP opposed the motion, contending plaintiffs had not shown either that common issues of fact and law predominated or that there was an ascertainable class. Specifically, HP presented evidence that of the approximately 118,514 class model computers sold under the Pavilion brand name, approximately 4,716 were reported to need repairs due to display screen problems.

In November 2005, the court determined that the proposed class definition was flawed, but that it would consider a subsequent motion should plaintiffs cure the defect. In response, plaintiffs filed a supplemental motion for class certification in April 2006, revising the proposed class definition to include: "[a]ll persons or entities who own or owned one or more of the following HP Pavilion notebook models: [model numbers]; and who experienced a dim, dark, or flickering display screen."

At the July 2006 hearing on the supplemental motion, the trial court expressed its view that the class definition should contain one of the inverters in question. The court stated it could give plaintiffs another opportunity to redefine the class to include the inverter.

On August 30, 2006, plaintiffs again filed a supplemental memorandum in support of their motion for class certification. Plaintiffs redefined their proposed class as "[a]ll persons or entities who own or owned one or more of the following HP Pavilion notebook models: [model numbers]; [a]nd the computer contained or contains TDK TAD669 Rev. 2.0 inverter or an Ambit inverter, [part numbers]."

At the September 2006 hearing on the supplemental motion for class certification, the court expressed concern that there was no evidence on the useful life of notebook computers, and allowed plaintiffs time to submit supplemental briefing and evidence on the issue. In response, plaintiffs submitted the declaration of an expert on the useful life of notebook computers as five years.

At the November 2006 hearing on the supplemental motion, the court asked the parties to provide briefing on the effect of *Daugherty, supra*, 144

Cal.App.4th 824, a case related to product liability under express warranties that had been decided in October 2006.

At the fifth and final hearing on the motion for class certification in January 2007, the court granted plaintiffs' motion in part, certifying a class with respect to the causes of action for violation of the UCL and for breach of express warranty. The court defined the class as follows: "[a]ll persons or entities who own or owned one or more of the following HP Pavilion notebook models: [model numbers] containing a TDK TAD669 Rev. 2.0 inverter or an Ambit inverter, [part numbers]; who purchased the notebook from an entity located within California, and who experienced a dim, dark, or flickering display. Excluded from the class are employees, directors, officers, or agents of Defendant." The court also ordered that only plaintiff Degenshein could represent the class, because it was limited to those who purchased in California.

In its order certifying the class, the court stated that it was not ruling on the effect of the principles set forth in the *Daugherty* case. The trial court concluded that the issues in *Daugherty* go to whether individual class members are entitled to recover, not whether there is a sufficient class.

Following the California Supreme Court's denial of the petition for review in *Daugherty*, HP filed a motion for decertification on February 27, 2007, requesting the trial court rule on the effect that *Daugherty* had on the class certification. At the hearing on the motion for decertification in March 2007, the trial court stated it would deny HP's motion for decertification because it was "premature."

At the court's request, plaintiffs submitted a revised proposed class action notice, and on April 23, 2007, the court entered its order approving a class notice including the following as members of the class: "[a]ll persons and entities who own one or more of the following HP Pavilion notebook models: [model numbers]; and who purchased a computer from an entity in California; and whose computer contains or contained a TDK TAD699 Rev. 2.0 inverter or an Ambit inverter bearing [part numbers]; and who experienced a dim or flickering display that made the notebook inoperable."

HP filed a petition for peremptory writ of mandate, directing the trial court to vacate an order certifying a class in this action. We stayed the matter, and issued an order to show cause why the writ should not issue, and requested opposition from real parties in interest.

DISCUSSION

■ "Courts long have acknowledged the importance of class actions as a means to prevent a failure of justice in our judicial system. [Citations.] ' "By

establishing a technique whereby the claims of many individuals can be resolved at the same time, the class suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress . . . ." ' " (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 434–435 [97 Cal.Rptr.2d 179, 2 P.3d 27] (*Linder*).)

"Generally, a class suit is appropriate 'when numerous parties suffer injury of insufficient size to warrant individual action and when denial of class relief would result in unjust advantage to the wrongdoer.' [Citations.] But because group action also has the potential to create injustice, trial courts are required to ' "carefully weigh respective benefits and burdens and to allow maintenance of the class action only where substantial benefits accrue both to litigants and the courts." ' " (*Linder, supra,* 23 Cal.4th at p. 435.)

Code of Civil Procedure section 382 authorizes class actions "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . ." The party seeking certification has the burden to establish the existence of both an ascertainable class and a well-defined community of interest among class members. (*Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1104 [131 Cal.Rptr.2d 1, 63 P.3d 913] (*Lockheed*), citing *Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, 913 [103 Cal.Rptr.2d 320, 15 P.3d 1071].) The "community of interest" requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class. (*Lockheed, supra,* 29 Cal.4th at p. 1104.)

Certification is a question that is "essentially . . . procedural . . . [and] does not ask whether an action is legally or factually meritorious." (*Linder, supra,* 23 Cal.4th at pp. 439–440.) A trial court ruling on a certification motion determines "[W]hether . . . the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants." (*Collins v. Rocha* (1972) 7 Cal.3d 232, 238 [102 Cal.Rptr. 1, 497 P.2d 225] (*Rocha*).) The trial court in this case determined that plaintiffs had established by a preponderance of the evidence that common issues predominate and ruled that a class action is "superior to alternate means for a fair and efficient adjudication of the litigation."

"Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification. . . . [Accordingly,] a trial court ruling supported by substantial evidence generally will not be disturbed 'unless (1) im-

proper criteria were used [citation]; or (2) erroneous legal assumptions were made [citation]' [citation]." (*Linder, supra*, 23 Cal.4th at pp. 435–436.) " 'Any valid pertinent reason stated will be sufficient to uphold the order.' " (*Id.* at p. 436.) Therefore, we review the trial court's ruling granting certification of the class in this case for abuse of discretion.

Although HP contends the trial court erred in concluding Degenshein has claims typical of the class and is an adequate representative of the class, the primary issue in dispute is whether the trial court abused its discretion in concluding that common issues predominate necessitating class treatment. HP specifically focuses on the case of *Daugherty, supra*, 144 Cal.App.4th 824, and its holding that an express warranty does not extend the claims of defect beyond the warranty period. HP asserts *Daugherty*'s rationale is applicable to the present case, and specifically limits its potential liability for the allegations set forth by plaintiffs, making the issues individual, rather than subject to common proof. Moreover, HP argues the trial court erred in refusing to apply the principles of *Daugherty* to the determination of class certification.[2]

In *Daugherty*, the plaintiffs were owners of Honda automobiles with an allegedly defective engine. (*Daugherty, supra*, 144 Cal.App.4th at p. 827.) The plaintiffs alleged that Honda had actual notice that the engines were experiencing severe mechanical problems due to oil leaks, but failed to provide adequate notice of the defect to owners of affected models. (*Id.* at p. 828.) The plaintiffs first discovered the defects in their cars *after* the express warranty term of three years or 36,000 miles. The plaintiffs contended that "because the language of Honda's express warranty did not state that the defect must be 'found,' 'discovered' or 'manifest' during the warranty period, the warranty covers any defect that 'exists' during the warranty period, no matter when or whether a malfunction occurs." (*Id.* at pp. 831–832.) With respect to the plaintiffs' express warranty claim, the *Daugherty* court held: "[w]e agree with the trial court that, as a matter of law, in giving its promise to repair or replace any part that was defective in material or workmanship and stating the car was covered for three years or 36,000 miles, 'Honda did not agree, and plaintiffs did not understand it to agree, to repair latent defects that lead to a malfunction after the term of the warranty.' " (*Id.* at p. 832.)

The principles of *Daugherty* address the law of express warranty as applied to claims of economic loss due to a product's defect. Specifically, *Daugherty*

---

[2] The trial court requested briefing on the *Daugherty* case following its issuance on October 31, 2006, and after review, the court declined to apply *Daugherty*'s principles, stating in reference to HP's motion for reconsideration following the court's certification of the class: "I don't have a sufficient basis for determining whether or not *Daugherty* applies to this case or not today."

holds that failure of a component part after the expiration of the express warranty does not support a claim for relief under an express warranty claim. (*Daugherty, supra*, 144 Cal.App.4th at pp. 838–839.)

The crux of plaintiff's claim is that certain HP notebook computers contained types of inverters that HP knew would likely fail and cause the screens to dim and darken at some time before the end of the notebook's "useful life." HP asserts that under *Daugherty*, this claim would not establish its liability. *Daugherty* holds there can be no claim for breach of express warranty or UCL violations arising from proof that the manufacturer knew at the time of the sale that the component part might fail *at some point in the future*. (*Daugherty, supra*, 144 Cal.App.4th at pp. 838–839.)

While *Daugherty* may have implications for the *merits* of the underlying action, and indeed may serve to bar claims by plaintiffs that occurred outside the warranty period, it does not affect a determination of class certification. *Daugherty* is distinguished from the present action because it related to a substantive question on demurrer rather than a procedural question as here on a motion for class certification. And the question in a determination of class certification is "essentially . . . procedural . . . [and] does not ask whether an action is *legally or factually meritorious*." (*Linder, supra*, 23 Cal.4th 429, 439–440, italics added.)

If we were to accept HP's argument regarding the application of *Daugherty* to the present action, we would be considering the merits of the underlying action. And the question of class certification "does not ask whether an action is legally or factually meritorious." (*Linder, supra*, 23 Cal.4th at pp. 439–440.) Rather, a ruling on a certification motion determines whether "the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants." (*Rocha, supra*, 7 Cal.3d at p. 238.)

Moreover, in considering HP's arguments, we are not persuaded by HP's reliance on *Daugherty* for its position that a product malfunction is required in order for the product to be considered defective. Indeed, Degenshein's theory of liability is based on *Hicks v. Kaufman & Broad Home Corp.* (2001) 89 Cal.App.4th 908 [107 Cal.Rptr.2d 761] (*Hicks*), and its holding that defect is defined by a substantial certainty of premature failure, not on an actual malfunction during the warranty period. In *Hicks*, the Court of Appeal reversed the trial court's denial of class certification for a construction defect breach of warranty claim in part on its finding that "proof of breach of warranty does not require proof the product has malfunctioned but only that it contains an inherent defect which is substantially certain to result in malfunction during the useful life of the product." (*Id.* at p. 918.) The court

concluded that common issues predominated for the purpose of class certification because the "question whether an inherently defective product is presently functioning as warranted goes to the remedy for the breach, not proof of the breach itself." (*Ibid.*) As applied to the present case, under this theory, an actual malfunction of the notebook screens would not be necessary to establish defect, if it could be established that the notebook screens were substantially certain to fail prematurely.

Contrary to HP's argument in this case, whether or not the alleged defects occurred during the warranty period does not affect a finding of community of interest in the present case. Plaintiffs here allege a common defect in the HP notebook computers and their display screens. In order to prove that defect, plaintiffs will present evidence of call records reporting dim displays, records of repairs of faulty inverters, service notes documenting defects that were known to HP, and an HP policy that all notebooks returned for any reason would have their inverter repaired, regardless of whether the screen actually failed. A jury could find, based on this evidence, that the inverters in question were defective and that HP is liable for the defect. The issue of whether the inverters were defective is appropriate for a joint trial with common proof. For example, if the jury finds that the inverters were defective, then each plaintiff would not need to separately prove that his or her inverter was defective, only that he or she had a computer that contained that type of inverter.

In this writ, HP requests that we order the trial court to vacate its order certifying the class because some of the plaintiffs' claims may be substantively invalid under *Daugherty*. This is not a proper consideration on the question of class certification. The merits of the case can and will be decided at a later point in this case. Indeed, the trial court stated with regard to *Daugherty* that it was "neither ruling on the merits of the causes of action not what limits to recovery for any class member might be."

In sum, the trial court did not abuse its discretion in certifying the class in this case. The principles of *Daugherty* do not serve to undermine the community of interest required to certify a class in the present case. When applied, *Daugherty* goes to the merits of the claim, rather than the procedural question of class determination. HP's liability to the class overall is subject to a review by facts common to all class members, and as such, it is appropriate for class treatment.

## DISPOSITION

The writ is denied. Costs in these original proceedings are awarded to real parties in interest.

Premo, J., and Elia, J., concurred.