Mark D. LIMA, on behalf of himself
and all others similarly
situated, Plaintiff,

v.

GATEWAY, INC., Defendant.

Case No. SACV 09–01366
DMG (MLGx).

United States District Court,
C.D. California.

April 26, 2010.

Alexis Alexander Phocas, Gordon M. Fauth, Jr., Litigation Law Group, Alameda, CA, Rosemary M. Rivas, Tracy Tien, Finkelstein Thompson LLP, San Francisco, CA, for Plaintiff.

Paul F. Rafferty, Christopher Andrew Bauer, Jones Day, Irvine, CA, for Defendant.

## ORDER RE DEFENDANT'S MOTION TO DISMISS [9]

DOLLY M. GEE, District Judge.

This matter is before the Court on Defendant's Motion to Dismiss. A hearing was held on April 26, 2010, at which the parties appeared through their attorneys of record. For the reasons set forth below, the Motion to Dismiss is DENIED.

## I.

### *PROCEDURAL HISTORY*

On November 23, 2009, Plaintiff Mark D. Lima filed a Class Action Complaint against Defendant Gateway, Inc. on behalf of all persons or entities who bought a Gateway XHD3000 monitor. Plaintiff filed a First Amended Class Action Complaint ("1AC") on January 22, 2010. On February 22, 2010, Defendant filed a Motion to Dismiss. Plaintiff filed an Opposition on March 22, 2010 and Defendant filed a Reply on April 12, 2010.

## II.

### *ALLEGATIONS OF THE FIRST AMENDED CLASS ACTION COMPLAINT*

Gateway, a computer hardware company headquartered in Irvine, California, develops, manufactures, supports, and markets a wide range of personal computers, computer monitors, servers, and computer peripherals and accessories. (1AC ¶ 11.) Following an October 2007 merger, Gateway has operated as a subsidiary of computer maker Acer, Inc. (*Id.* ¶ 13.)

On October 6, 2007, Gateway introduced the Gateway XHD3000 30–inch LCD monitor. Throughout the time period that Gateway sold the XHD3000, Gateway advertised the monitor's features on the product's packaging, in press releases, and on the Internet, both on its own website, www.gateway.com, and through online review websites such as those operated by Amazon.com, CNET.com, and PCMAG.com. (*Id.* ¶ 15.) Gateway sold the monitors directly through its website as well as in other retail stores. It initially priced the monitors at $1,699.99. (*Id.* ¶ 17.)

Gateway represented and advertised the XHD3000 as "the world's first 'Quad–HD' display, delivering more than four times the resolution of standard 720p high definition along with advanced display technology"; offering a "visually intense" gaming experience designed "to avoid skipped graphics or screen stutter"; and "providing maximum investment protection and long-term functionality." Gateway also represented that users could watch HD video and movies and high-speed graphics on the XHD3000, free of visual artifacts. (*Id.* at ¶ 15.) Gateway further advertised the XHD3000 monitor as allowing users to set their graphics card to balance resolution and frames per second "to avoid skipped graphics or screen stutter." (*Id.* ¶ 16.)

Gateway advertised the XHD3000 as ideal for consumers who want a truly remarkable, cinema-quality viewing experience. Further, Gateway advertised the XHD3000 as uniquely suited for both entertainment and computing, such as viewing and editing HD video, playing online, PC and console games, as well as running creative PC applications. (*Id.* ¶ 17.) Gateway advertised that the XHD3000's resolution of 2,560 × 1,600 pixels would allow consumers to "watch streaming video in a picture-in-picture window, and resize the PIP window to full HD resolution, or adjust the color and transparency to just the way you want." (*Id.* ¶ 18.)

Gateway also touted the monitor as having "über-universal functionality" [1] in that it would purportedly function as a single, high-quality viewing device for the user's computer and video appliances, including desktop computer, notebook computer, Microsoft Xbox360, Sony PlayStation 3, Nintendo WII, Blu-ray, TiVo, and DirecTV. Gateway's promotional materials stated that there was "not much" that would not connect to the XHD3000 and that a user

"can connect 6 devices simultaneously using an array of connectivity options that include HDMI, DVI, component video and S-video." They further stated that all connected devices could play at "1600p, thanks to our XHD3000's upsampling prowess." (*Id.* ¶ 19.)

On its website and product specification materials, Gateway stated that the XHD3000's replaceable LCD screen has a minimum lamp life of 50,000 hours, which is equivalent to approximately five years of continuous use. LCD monitors are expected to have a duration of at least the stated lamp life. (*Id.* ¶ 20.)

Numerous consumers have complained that the monitors began to malfunction relatively soon after purchase. Problems include flickering images, green tint or bars over the entire screen, vertical multicolor lines, green lines, blanking, severe banding, screen flutter, side button issues, blackouts, red flickering lines, and complete screen failures. These problems cause the monitors to become useless. (*Id.* ¶ 21.)

Unbeknownst to consumers before purchasing the XHD3000 monitor, the monitor does not achieve its maximum advertised resolution unless the consumer separately purchases a second video card. (*Id.* ¶ 22.) Gateway failed to disclose that additional video cards were necessary to achieve the advertised resolution. By advertising the XHD3000 monitor as having a resolution of 2,560 × 1,600 pixels, Gateway knew or should have known that consumers expected their XHD3000 monitor to perform at this capability without the purchase of additional accessories. (*Id.* ¶ 23.)

Although Gateway advertises the monitor as being able to connect to almost any device, Gateway does not issue video drives for certain devices. Connecting the

---

1. Umlaut omitted in original.

XHD3000 to a computer that lacks such a video drive causes the Windows operating system to identify the monitor as "generic" and constantly remind the user that a driver needs to be installed. (*Id.* ¶ 24.)

In addition, Gateway fails to restore defective XHD3000 monitors to advertised specifications whether or not the monitor is under warranty. Consumers pay to ship their defective monitors back to Gateway and receive replacements that are also defective, or else consumers receive service on their monitor that fails to remedy the problem, receive offers to replace the monitor with a far-cheaper monitor with inferior specifications, or get no responses at all once the warranties expire. (*Id.* ¶ 25.) Gateway representatives also direct consumers to find local technicians to fix their problems. Local technicians are not a viable solution because they lack the required components and/or are otherwise unable to repair the XHD3000. (*Id.* ¶ 26.)

Plaintiff, like other purchasers of the XHD3000, was deceived by Gateway's representations concerning the monitor. Before purchasing the XHD3000, Plaintiff visited the Gateway website, read advertisements, and substantially researched the XHD3000 monitor on the Internet. He compared its purported capabilities with those of competing high-end monitors. He chose the XHD3000 based on Gateway's representations concerning the monitor and its specifications and capabilities, including the representations described above. The advertised qualities he considered important in making his purchasing decision included: the purported quality of the monitor and its purported long-term functionality, providing many years of effective service; its high resolution, suitable for detailed high-speed graphics and HD video; its purported visual intensity, suitable for photo- and video-editing; the purported picture quality and absence of skipped graphics, screen stutter and artifacts with video and high-speed graphics; purported cinema-quality viewing; and the "über-universal functionality" that purportedly allowed this single monitor to be used for multiple functions, including as a computer-monitor, for high-quality gaming and graphics, for the display of HD video, and as an HD TV. (*Id.* ¶ 27.)

Plaintiff purchased the XHD3000 monitor in April 2008. Based on industry norms and on Gateway's representations concerning the superiority of XHD3000 and its quality, features, and specifications, Plaintiff expected the monitor to perform as advertised for many years. (*Id.* ¶ 28.) Plaintiff's XHD3000 monitor failed to perform reliably or with the advertised quality or functionality. Because Gateway failed to provide drivers allowing the monitor to function properly under the Windows operating system, Plaintiff's computer could not properly identify the monitor. Instead of the advertised high-performance display promised, with no skipped graphics, screen stutter and visual artifacts, the XHD3000 produced objectionable visual artifacts, including opaque green bars and streaks running across the display. The XHD3000 monitor failed to operate at the advertised resolution without an additional video card, which Plaintiff needed to separately purchase. (*Id.* ¶ 29.)

Plaintiff's XHD3000 monitor became essentially useless for the purposes for which it was purchased. Plaintiff could not use it for high-resolution, high-speed graphics, cinema-quality video, or high-quality HD TV. The unwanted video artifacts became so severe as to overwhelm the underlying image. There was no "über-universal functionality" and the monitor would not even work dependably as a computer monitor. (*Id.* ¶ 30.)

Gateway customer service and technical support failed to provide any fixes or solu-

tions. Gateway refused to repair Plaintiff's XHD3000 monitor, stating that it was outside warranty. Gateway offered to replace it with a $200 Acer monitor with inferior specifications. Plaintiff declined this offer. Plaintiff has searched but has been unable to find any other repair facilities that will repair his XHD3000 monitor. (*Id.* ¶ 31.) Numerous consumers who purchased the XHD3000 monitor similarly experienced the failure of their XHD3000 monitors. (*Id.* ¶ 32.)

In his first cause of action, Plaintiff claims that Gateway violated California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ.Code §§ 1750 *et seq.* Specifically, he asserts that (1) Gateway violated section 1770(a)(5) by representing that its goods had characteristics, ingredients, uses, benefits, or quantities which they did not; (2) Gateway violated section 1770(a)(7) by representing that its goods were of a particular standard, quality, or grade, when they were of another standard, quality, or grade; and (3) Gateway violated section 1770(a)(9) by advertising its goods with the intent not to sell them as advertised. (*Id.* ¶ 50.)

Plaintiff also claims that Gateway violated California's False Advertising Law ("FAL"), Cal. Bus. & Prof.Code §§ 17500 *et seq.* In particular, Plaintiff alleges that Gateway made representations and failed to disclose or adequately disclose material information regarding its XHD3000 monitor that it knew or should have known were deceptive and likely to cause reasonable consumers to buy the monitors in reliance thereon. (*Id.* ¶ 57.)

Lastly, Plaintiff claims that Gateway violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof.Code §§ 17200 *et seq.* According to Plaintiff, Gateway's actions and practices constitute "unlawful" business practices in violation of the UCL because they violate CLRA and the FAL. (*Id.* ¶ 63.) Plaintiff also claims that Gate-

way's actions and practices constituted "unfair" business practices in violation of the UCL because they were immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and/or because any utility from such practices is outweighed by the harm caused consumers. (*Id.* ¶ 64.)

## III.

### STANDARD GOVERNING MOTIONS TO DISMISS

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain " 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Federal Rules impose a heightened pleading standard on a party alleging fraud. *See* Fed.R.Civ.P. 9(b) (requiring party to "state with particularity the circumstances constituting fraud or mistake"). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may seek dismissal of a complaint for failure to state a claim upon which relief can be granted. A court may grant such a dismissal only where the plaintiff fails to present a cognizable legal theory or to allege sufficient facts to support a cognizable legal theory. *Mendiondo v. Centinela Hosp. Med. Ctr.,* 521 F.3d 1097, 1104 (9th Cir.2008).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955; *see also Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("Rule 8 ... does not require 'detailed factual allegations,' but it demands more than an unadorned, the-

defendant-unlawfully-harmed-me accusation."). In other words, the plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully" or "facts that are 'merely consistent with' a defendant's liability." *Id.*

In conducting the above analysis, a court must accept all factual allegations as true even if doubtful in fact. *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 129 S.Ct. at 1949.

## IV.

### DISCUSSION

#### A. *Plaintiff Need Not Allege The Date That His Monitor Malfunctioned*

Gateway contends that Plaintiff fails to state a CLRA claim because he does not state when his monitor broke. (Mot. at 8–12.) Gateway relies primarily on *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal.App.4th 824, 51 Cal.Rptr.3d 118 (2006), as well as federal district court cases citing *Daugherty*, for the proposition that, "absent contrary representations, a manufacturer cannot be liable under the CLRA for failure to disclose a defect that manifests itself *after* expiration of the warranty period." (Mot. at 9.)

CLRA prohibits a variety of practices in transactions for the sale or lease of goods or services to consumers. In particular, CLRA prohibits a person from "[r]epre-

senting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have," Cal. Civ.Code § 1770(a)(5), "[r]epresenting that goods or services are of a particular standard, quality, or grade . . ., if they are of another," *id.* § 1770(a)(7), or "[a]dvertising goods or services with intent not to sell them as advertised," *id.* § 1770(a)(9). In sum, the provisions of CLRA invoked by Plaintiff forbid a seller from representing or advertising a particular aspect of a product or service which the product or service lacks.

Gateway misapplies *Daugherty*, which involved allegations of fraudulent omissions. The *Daugherty* plaintiffs filed a nationwide class action lawsuit against an automobile manufacturer alleging, *inter alia*, that it had breached its express warranties and violated CLRA by failing to disclose an engine defect that did not cause malfunctions in the automobiles until long after the warranty expired. The California Court of Appeal held that "although a claim may be stated under the CLRA in terms constituting fraudulent omissions, to be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." 144 Cal.App.4th at 835, 51 Cal.Rptr.3d 118.

Here, unlike in *Daugherty*, the alleged CLRA violations are not grounded in rights derived from the product's warranty. Plaintiff instead asserts that Gateway made affirmative representations about its monitor that were either untrue or misleading. In this respect, Plaintiff's allegations are akin to those in *Outboard Marine Corp. v. Superior Court*, 52 Cal. App.3d 30, 124 Cal.Rptr. 852 (1975), a case which found that the plaintiff had stated a CLRA claim and with which *Daugherty* "d[id] not disagree." *Daugherty*, 144 Cal. App.4th at 834, 51 Cal.Rptr.3d 118.

In [*Outboard*], the defendant manufactured an off-road vehicle (trackster), and represented that it "was designed to operate within the parameters" of certain specifications, including gradeability (100 percent grade or 45 degrees plus); side hill ability of 45 degrees; traction "to get ... up grades as steep as 100 percent and even greater"; "makes the impassable possible"; "runs smoothly over rocks, stones and rough places"; and was "the most reliable all-terrain vehicle ever produced...." At the same time, the defendant allegedly knew, but did not disclose, that the vehicle would not operate within its design criteria, the vehicle was unstable and would roll over forward on a downgrade, and its braking system was "totally defective."

*Id.* (quoting *Outboard*, 52 Cal.App.3d at 34, 124 Cal.Rptr. 852). Thus, *Outboard* interpreted CLRA to include "a proscription against a concealment of the characteristics, use, benefit, or quality of the goods contrary to that represented." *Outboard*, 52 Cal.App.3d at 37, 124 Cal.Rptr. 852.

■ Similarly, Plaintiff alleges that Gateway made statements about the XHD3000 that were either false or misleading in light of other representations. Such allegations state a CLRA claim. Plaintiff's claim does not rely on any warranty provision. Plaintiff therefore does not need to allege the particular date that his monitor malfunctioned in order to state a valid CLRA claim under the facts of this case.[2]

Moreover, Gateway's arguments with respect to the warranty are in the nature of affirmative defenses: "Gateway wants to apply its warranty defenses, but can't be-

cause Plaintiff won't plead that his Monitor broke during the warranty. Gateway alternatively wants to assert Ninth Circuit law that bars post-warranty claims, but can't because Plaintiff won't plead that his Monitor broke after the warranty expired." (Reply at 2.) Rule 8 places the burden of pleading affirmative defenses squarely on the defendant. *See, e.g., Pa. State Police v. Suders*, 542 U.S. 129, 152, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004) ("The plaintiff might elect to allege facts relevant to [an affirmative defense] in her pleading or to present those facts in her case in chief, but she would do so in anticipation of the [defendant's] affirmative defense, not as a legal requirement."). Plaintiff thus has no obligation to allege facts related to Gateway's proposed warranty-based defenses.

### B. *Plaintiff's First Amended Class Action Complaint Alleges A Factual Basis For His Claims With Sufficient Specificity*

■ Gateway argues that Plaintiff's claims under the consumer protection statutes are subject to Rule 9's heightened pleading requirements because they are "grounded in fraud" and that Plaintiff has not met his burden. (Mot. at 12–14.) Plaintiff disputes Rule 9's applicability. (Opp'n at 19–21.) Plaintiff's position, however, is foreclosed by *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126–27 (9th Cir. 2009), which held that claims under CLRA and the UCL are subject to Rule 9 if they are "grounded in fraud" and that allegations of false representation and nondisclosure are grounded in fraud. Although *Kearns* only addressed claims under

---

**2.** It is not clear that there even *was* a single moment in time when Plaintiff's monitor "broke." According to Plaintiff, Gateway "made a slew of specific false representations regarding its purportedly premium monitor" but "deliver[ed] a monitor without the premi-

um characteristics advertised, even out of the box; a monitor that had inherent problems that either manifested or worsened, causing it to fail as even an ordinary monitor (without premium characteristics) right after the warranty expired." (Opp'n at 17.)

CLRA and the UCL, its reasoning would equally extend to claims under the FAL. Consequently, Rule 9 applies to all of Plaintiff's claims.

Rule 9(b) requires that allegations of fraud be "specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns*, 567 F.3d at 1124 (quoting *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir.2001)) (internal quotation marks omitted; ellipsis in *Kearns*). Averments of fraud must include " 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir.2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.1997)).

█ The First Amended Class Action Complaint satisfies the demands of Rule 9. It repeatedly identifies Gateway as the entity responsible for the alleged misrepresentations. It identifies the substance of the alleged misrepresentations, in many cases providing direct quotations of statements made concerning the capabilities of the XHD3000 monitor. The amended complaint includes the time frame of these alleged statements: beginning with the introduction of the XHD3000 on October 6, 2007 and continuing throughout the time period in which Gateway sold the monitor, which extended through at least April 2008—when Plaintiff made his purchase. It also describes where these statements occurred: on the monitor's packaging, in Gateway press releases, and on Gateway's website, www.gateway.com, as well as online review websites such as Amazon.com, CNET.com, and PCMAG.com. Finally, the amended complaint describes in detail how the alleged representations were false or misleading. For instance, it states that Gateway advertised the monitor as having a resolution of 2,560 × 1,600 pixels whereas the monitor could not achieve such resolution without the purchase of additional accessories. By answering the "who, what, when, where, and how," the First Amended Class Action Complaint provides Gateway with sufficient notice to defend against Plaintiff's charges.

**C. *Although Some Of The Alleged Representations Are Individually Non–Actionable, They Contribute To The Alleged Misrepresentations As A Whole***

█ Gateway contends that its alleged statements are non-actionable because they amount to mere puffery and/or because Plaintiff's allegations do not show their falsity. (Mot. at 14–16.) Claims under CLRA, FAL and UCL are governed by the "reasonable consumer" test, under which a plaintiff must show that "members of the public are likely to be deceived." *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir.2008) (internal quotation marks omitted). Whether a business practice is deceptive will usually present a question of fact and therefore dismissal of a UCL claim for failure to state a deceptive practice will be appropriate only in "the rare case." *Id.* at 938–39.

█ Several of the representations allegedly made by Gateway, considered in isolation, might amount to mere puffery. For instance, statements that the monitor offered a "visually intense" gaming experience or "über-universal functionality" are not quantifiable and, as such, entirely subjective. These statements, however, cannot be considered in isolation because they contribute to the deceptive context of the advertising as a whole. *See Williams*, 552 F.3d at 939 n. 3. A representation of a "visually intense" gaming experience relates to Plaintiff's claim that Gateway misled him into believing that the monitor could attain a resolution of 2,560 × 1,600 pixels without additional purchase. A rep-

resentation of "über-universal functionality" relates to Plaintiff's claim that Gateway misled him into thinking that the monitor would connect to almost any device.

To the extent Gateway argues that these unquantifiable statements are not alleged to be false, it misses the point. The relevant question is whether the statements, taken as a whole, are likely to deceive members of the public. The answer is in the affirmative given that, for purposes of this motion to dismiss, Plaintiff's allegations must be accepted as true.

## V.

### CONCLUSION

In light of the foregoing, Defendant Gateway's Motion to Dismiss is DENIED.

IT IS SO ORDERED.