**Ani AVEDISIAN aka Ani Acevedo, individually, and on behalf of a class of similarly situated individuals, Plaintiff,**

v.

**MERCEDES–BENZ USA, LLC, Defendant.**

**Case No. CV 12–0936 DMG (CWx).**

United States District Court, C.D. California.

Signed Sept. 8, 2014.

Robert L. Starr, Adam Morris Rose, Law Office of Robert L. Starr, Woodland Hills, CA, Stephen M. Harris, Knapp Petersen and Clarke, Glendale, CA, for Plaintiff.

Eric J. Knapp, Matthew J. Kemner, Troy M. Yoshino, Chad A. Stegeman, Carroll Burdick & McDonough LLP, San Francisco, CA, for Defendant.

### AMENDED ORDER RE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [129]

DOLLY M. GEE, District Judge.

This matter is before the Court on Defendant Mercedes–Benz USA, LLC's ("MBUSA") motion for summary judgment. [Doc. # 129.] A hearing on this motion was held on September 5, 2014. Having duly considered the parties' written submissions and oral argument, the Court now **GRANTS** Defendant's motion.

### I.

### FACTUAL BACKGROUND

As it must on this motion for summary judgment, the Court sets forth the material facts and views all reasonable inferences to be drawn from them in the light most favorable to Plaintiff Ani Avedisian, the

non-moving party. The following facts are undisputed unless otherwise noted.[1]

## A. The Vehicle's Purchase, Repair, and Operational History

This action concerns Plaintiff's allegations that she, her husband, and other passengers in her 2006 Mercedes–Benz CLS 500 received cuts from the peeling chrome trim on certain interior car components, such as the gear shifter and cup holder ("Chrome Defect"). Plaintiff purchased her car used on May 17, 2009. (Defendant's Responses and Objections to Plaintiff's Statement of Genuine Disputes ("D's Responses") ¶ 2; see Declaration of Troy M. Yoshino ("Yoshino Decl.") ¶ 13, Exh. K ("May 17, 2009 Purchase Agreement").) At the time of the purchase, the vehicle was over four years old with over 45,000 miles on it, and its New Vehicle Limited Warranty had expired. (D's Responses ¶ 3; see Yoshino Decl. ¶ 3, Exh. A (Ani Acevedo Depo. at 40:10–14, 42:5–7, 137:8–138:25); Yoshino Decl. ¶ 13, Exh. K ("May 17, 2009 Purchase Agreement").) Plaintiff did not review MBUSA advertising materials or brochures about the CLS prior to or at the time she purchased the vehicle. (See Declaration of Stephen M. Harris ("Harris Decl.") ¶ 10, Exh. 9 (Ani Acevedo Depo. at 34:21–36:14).) Instead, she looked at the Kelley Blue Book and dealership websites to compare prices. (Id.)

Plaintiff was the primary driver of the vehicle from May 2009 until approximately January 2011, at which time Plaintiff's husband became the primary driver of the vehicle. (D's Responses ¶ 6; see Yoshino Decl. ¶ 3, Exh. A (Ani Acevedo Depo. at 55:2–22).) Plaintiff does not recall ever taking it into a Mercedes–Benz dealership to repair any of the interior chrome trim pieces during the time she was the primary driver of the vehicle, though she may have mentioned the problem once during a dealership visit. (See Yoshino Decl. ¶ 3, Exh. A (Ani Acevedo Depo. at 126:5–127:8).) Plaintiff testified that if there had been an issue with the chrome trim, she would have taken it into the dealership. (See Yoshino Decl. ¶ 3, Exh. A (Ani Acevedo Depo. at 39:25–40:7).)

Plaintiff's husband took the vehicle into the Mercedes–Benz dealership on or around February 3, 2011 to repair the chrome trim on the gear shifter and the cup holder, but ultimately declined the repair. (See Yoshino Decl. ¶ 3, Exh. A (Ani Acevedo Depo. at 12:21–13:8, 15:7–10, 126:5–127:8); Yoshino Decl. ¶ 4, Exh. B (Juan Acevedo Depo. at 207:20–208:12, 221:8–222:7).) The repair order documenting this visit is the earliest written record of a request to repair the chrome trim in Plaintiff's vehicle. (See Yoshino Decl. ¶ 5, Exh. C ("Feb. 8, 2011 and Mar. 14, 2011 Repair Orders").) Plaintiff's husband insists, however, that he brought the vehicle to the dealership to complain about the

---

[1]. The parties object on several evidentiary grounds, including relevance, to each other's "undisputed" facts. To the extent that the Court relies on Defendant's facts, it overrules Plaintiff's blanket objections. The same is true for Defendant's proffered facts. The Court addresses the parties' other evidentiary objections only to the extent the Court relies on the corresponding evidence.

The parties argue that some of the "undisputed" facts included herein are disputed without identifying any material facts that raise a genuine issue. The Court has reviewed all such blanket objections and finds them without merit. A party must establish a genuine dispute of material fact with more than a conclusory objection or denial. "Rule 56(e) ... requires the nonmoving party to ... designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotation marks omitted).

chrome trim pieces as early as July 2010. (*See* Yoshino Decl. ¶ 4, Exh. B (Juan Acevedo Depo. at 214:14–24).) Plaintiff's husband took the vehicle into the dealership again on or around March 7, 2011 to request a price quote to replace the gear shifter and cup holder. (*See* Yoshino Decl. ¶ 4, Exh. B (Juan Acevedo Depo. at 217:9–218:5); Yoshino Decl. ¶ 5, Exh. C ("Feb. 8, 2011 and Mar. 14, 2011 Repair Orders").) He received a quote but again declined the repair.

Plaintiff did not replace the cup holder in the vehicle until on or around March 23, 2012. (*See* Yoshino Decl. ¶ 3, Exh. A (Ani Acevedo Depo. at 135:10–12).) Plaintiff never repaired or replaced the gear shifter. (*See* Yoshino Decl. ¶ 3, Exh. A (Ani Acevedo Depo. at 143:15–19).) Plaintiff and her husband eventually drove the vehicle for approximately 4.5 years and around 65,000 miles. (D's Responses ¶ 13; *see* Yoshino Decl. ¶ 3, Exh. B (Juan Acevedo Depo. at 241:9–23, 242:7–15, 243:15–244:1; Yoshino Decl. ¶ 13, Exh. K ("May 17, 2009 Purchase Agreement")); Yoshino Decl. ¶ 11, Exh. I ("Photos from Nov. 12, 2013 Inspection").) Moreover, Plaintiff's husband stated that if he had felt any "life-threatening" risk to his personal safety he would not have driven the vehicle, but "if

it's just going to cut [his] finger," then he would have driven the car, and he "did [ ] for a couple of years." (*See* Harris Decl. ¶ 13, Exh. 12 (Juan Acevedo Depo. at 74:2–75:8).) As of now, the odometer reading shows the car has been driven for over 113,000 miles. (*See* Yoshino Decl. ¶ 11, Exh. K ("Photos from Nov. 12, 2013 Inspection").)

## B. Injuries from the Chrome Defect

Plaintiff claims that she, her husband, and other passengers in her vehicle were "lacerated" by the Chrome Defect. Those who were injured by the Chrome Defect, however, described minor cuts to their hands.[2] Plaintiff's husband, for example, referred to his injury as a "nick" to his finger. (*See* Yoshino Decl. ¶ 4, Exh. B (Juan Acevedo Depo. at 246:9–21).) A second passenger likewise used the term "nick" several times to describe his injury, elaborating that it was probably "a little bigger than a paper cut," "an annoyance," and "nothing [ ] a band-aid couldn't fix." (*See* Yoshino Decl. ¶ 7, Exh. E–3 (Ranulfo Elizarraras Depo. at 29:3–6, 31:13, 20, 33:20–34:3, 34:7–8).) Two other passengers described their injuries as "scratches." (*See* Yoshino Decl. ¶ 7, Exh. E–2 (Maria Acevedo Depo. at 19:16–19); Yoshi-

---

**2.** Along with deposition testimony by those injured, Plaintiff proffers two pieces of evidence in support of her assertion that cuts resulting from the Chrome Defect are a safety hazard. The first is MBUSA's record of warranty repairs and complaints related to the Chrome Defect, though only a small subset of these complaints mentioned injuries. (*See* Declaration of Stephen M. Harris ¶ 1, Exh. 1 [Doc. # 94–1].) Defendant objects to this evidence on hearsay grounds, as out-of-court statements made by Mercedes–Benz owners to their respective dealerships that are being offered for their truth, *i.e.,* that these owners' cars had the Chrome Defect. Fed.R.Evid. 802. Since the Court agrees with Defendant's characterization of these statements as hearsay, Defendant's objection is SUSTAINED. Fur-

ther, even if Plaintiff were able to cure the hearsay issue at trial, the evidence would be insufficient to overcome a finding that the cuts were minor.

Second, Plaintiff proffers evidence of a "serious laceration" requiring sutures suffered by one of Plaintiff's counsel's clients due to the chrome trim on his 2007 Mercedes E350. (*See* Declaration of Robert L. Starr ¶ 12 [Doc. # 92–5].) Here, Defendant objects because Starr lacks personal knowledge of how his client injured his hand. L.R. 7–7; Fed. R.Civ.P. 56(c). Since the attorney did not witness how his client injured his hand, and thus lacks personal knowledge of how the injury occurred, the Court SUSTAINS Defendant's objection.

no Decl. ¶ 7, Exh. E–6 (Melanie Sunshine Speregen Depo. at 30:9–14).) Yet another passenger reported "just a little cut," similar to a paper cut, for which a bandage was sufficient to treat the wound. (*See* Yoshino Decl. ¶ 7, Exh. E–4 (Sarkis Avedisian Depo. at 20:21–24, 22:25–23:15, 33:24–34:1).) Another passenger described his injury as "just a tiny cut" that bled for "a couple minutes" until he took care of it with a napkin and eventually a bandage. (*See* Yoshino Decl. ¶ 7, Exh. E–5 (Akop Avedisian Depo. at 52:15–25).) Finally, one passenger refused to use the term "cut" to refer to the injury she received, saying instead, "I only scraped myself." (*See* Yoshino Decl. ¶ 7, Exh. E–1 (Leovigildo Acevedo Perez Depo. at 20:3–7).)

The most serious injury was a "deep" cut that the passenger believed—but was not entirely sure—had formed a scar. (*See* Harris Decl. ¶ 8, Exh. 7 (Melanie Sunshine Speregen Depo. at 31:10–32:9).) At the time she received it, she described it as a "scratch." (*See* Yoshino Decl. ¶ 7, Exh. E–6 (Melanie Sunshine Speregen Depo. at 30:9–14).) She did not seek medical treatment for the wound. (*See* Harris Decl. ¶ 8, Exh. 7 (Melanie Sunshine Speregen Depo. at 32:19–25).)

In fact, none of those injured sought medical treatment for the injuries caused by the Chrome Defect. (*See* Yoshino Decl. ¶ 3, Exh. A (Ani Acevedo Depo. at 195:6–16); Yoshino Decl. ¶ 4, Exh. B (Juan Acevedo Depo. at 247:1–14); Yoshino Decl. ¶ 7, Exh. E3 (Ranulfo Elizarraras Depo. at 34:18–19); Yoshino Decl. ¶ 7, Exh. E–4 (Sarkis Avedisian Depo. at 33:21–23); Yoshino Decl. ¶ 8, Exh. F (Howard Pitchon, M.D. Depo. at 22:13–23); Harris Decl. ¶ 2, Exh. 1 (Maria Acevedo Depo. at 22:24–23:2); Harris Decl. ¶ 7, Exh. 6 (Anoush Sarkisyan Depo. at 29:20–21).) Most of the passengers described treating the wound by washing it and putting on a bandage. (*See* Yoshino Decl. ¶ 7, Exh. E–4 (Sarkis Avedisian Depo. at 23:7–8; Yoshino Decl. ¶ 7, Exh. E–5 (Akop Avedisian Depo. at 52:15–25); Harris Decl. ¶ 2, Exh. 1 (Maria Acevedo Depo. at 22:25–23:2)).) Further, no one, including Plaintiff's medical expert, is aware of anyone who has developed an infection from injuries caused by the Chrome Defect. (*See* Yoshino Decl. ¶ 8, Exh. F (Howard Pitchon, M.D. Depo. at 89:2–22); Yoshino Decl. ¶ 4, Exh. B (Juan Acevedo Depo. at 247:15–248:11).) Plaintiff's medical expert asserted, however, that one could get an infection from a break in the skin like the cuts sustained by Plaintiff and the passengers in Plaintiff's vehicle. (*See* Yoshino Decl. ¶ 8, Exh. F (Howard Pitchon, M.D. Depo. at 89:13–20).)

## II.

### LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *accord Wash. Mut. Inc. v. United States,* 636 F.3d 1207, 1216 (9th Cir.2011). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party has met its initial burden, Rule 56(c) requires the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions

on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548 (quoting Fed. R.Civ.P. 56(c), (e) (1986)); *see also Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir.2010) (*en banc* ) ("Rule 56 requires the parties to set out facts they will be able to prove at trial."). "[T]he inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III.

## DISCUSSION

On March 31, 2014, Plaintiff filed the operative Second Amended Complaint ("SAC"), asserting the following claims against Defendant: (1) violation of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ.Code § 1750 *et seq.;* (2) violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof.Code § 17200 *et seq.;* (3) breach of the implied warranty of merchantability under the Song–Beverly Act, Cal. Civ.Code § 1790 *et seq.;* and (4) fraud. [Doc. # 116.] Defendant now moves for summary judgment on these claims. (Mot. at 2.)

### A. Violation of the Consumer Legal Remedies Act

■ Plaintiff claims that Defendant's failure to disclose the risk that the Chrome Defect would arise after the expiration of the warranty period violates the CLRA, Cal. Civ.Code § 1750 *et seq.* The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ.Code § 1770(a). "Conduct that is 'likely to mislead a rea-

sonable consumer' violates the CLRA." *Wilson v. Hewlett–Packard Co.*, 668 F.3d 1136, 1140 (9th Cir.2012) (quoting *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App.4th 663, 680, 38 Cal.Rptr.3d 36 (2006)).

■ To be actionable under the CLRA, an "omission must be contrary to a representation made by the defendant, or an omission of fact the defendant was obliged to disclose." *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App.4th 824, 835, 51 Cal.Rptr.3d 118 (2006). "Under California law, there are four circumstances in which an obligation to disclose may arise: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." *Smith v. Ford Motor Co.*, 749 F.Supp.2d 980, 987 (N.D.Cal.2010) (citing *LiMandri v. Judkins*, 52 Cal.App.4th 326, 337, 60 Cal. Rptr.2d 539 (1997)). Because Plaintiff does not claim the existence of a fiduciary relationship, only the remaining three circumstances are addressed below.

■ Those circumstances all require that an omitted fact be material. Outside of representations made in the warranty, a defect is material only if it poses safety concerns. *Daugherty*, 144 Cal.App.4th at 836, 51 Cal.Rptr.3d 118; *Bardin v. Daimlerchrysler Corp.*, 136 Cal.App.4th 1255, 1270, 39 Cal.Rptr.3d 634, 643 (2006). The safety concern must be an "unreasonable safety hazard." *Wilson*, 668 F.3d at 1143. There are two ways in which a risk may be assessed for reasonableness: causation and degree of injury.

■ With respect to causation, Plaintiff has established "a sufficient nexus" between the alleged defect, *i.e.*, the peeling chrome trim, and the purported safety issue, *i.e.*, cuts on the fingers. *See id.* at 1143–44. As the Court indicated in its order addressing Defendant's motion to dismiss, however, it is conceivable that, following discovery, the evidence in the record would show that the nature or degree of the injury typically caused by the Chrome Defect was so *de minimis* as to not raise any safety concern. [Doc. # 28, p. 9.] Having now reviewed the evidence in the light most favorable to Plaintiff, the Court finds this to be the case.

California law does not directly speak to the severity of injury necessary to characterize something as a safety defect, requiring only that there be a "safety concern." *Daugherty,* 144 Cal.App.4th at 836, 51 Cal. Rptr.3d 118; *Bardin,* 136 Cal.App.4th at 1270, 39 Cal.Rptr.3d 634. In *Smith,* however, the court held that the failure of a car to start due to an ignition-lock defect did not present "a risk to safety such that the nondisclosure of such defect constituted a material omission." 749 F.Supp.2d at 991. In reaching that conclusion, the court agreed with the defendant's position that "motor vehicle safety does not include any conceivable safety hazard, *no matter how insignificant.*" *Id.* at 990 (internal citations and quotations omitted) (emphasis added).

The *Smith* court drew this language regarding the significance of the hazard from the court's interpretation of the National Highway Safety Act's ("Safety Act") standard for defects in *U.S. v. General Motors Corp.,* 656 F.Supp. 1555, 1580 (D.D.C. 1987). *See Smith,* 749 F.Supp.2d at 990. The Safety Act defines "motor vehicle safety" as "the performance of motor vehicles in such a manner that the public is protected against *unreasonable risk of accidents* occurring because of the design,

construction, or performance of a motor vehicle, and against unreasonable risk of death or injury in an accident, and includes nonoperational safety of a motor vehicle." 49 U.S.C. § 30102(a)(8) (emphasis added). Given the Safety Act's more circumscribed purpose in the safety defect context of "reduc[ing] traffic accidents and deaths and injuries resulting from traffic accidents," 49 U.S.C. § 30101, CLRA claims alleging safety concerns need not show an unreasonable risk of accidents as opposed to some comparable harm. But to be a comparable harm, the safety concern, as the *Smith* court suggested, must be something more than insignificant.

The court in *Smith* did not need to draw the line as to what constitutes an insignificant safety concern because it found the alleged harm there to be only speculative. Here, there is evidence that a substantial number of people, namely Plaintiff and other drivers or passengers in her car, suffered "nicks," "paper cuts," "scrapes," and "scratches" from the Chrome Defect. The Court concludes, however, that no reasonable jury could find that the harm caused by the Chrome Defect is a safety concern within the ambit of the CLRA. Moreover, to the extent that there is any risk of more serious harm, e.g., infections, then the speculativeness problem identified in *Smith* applies equally here. In *Smith,* the court held that the alleged harm of being unexpectedly stranded because of a driver's inability to start the engine due to the ignition-lock defect was too speculative, "deriving in each instance from the particular location at which the driver initially has parked the vehicle and/or the driver's individual circumstances." 749 F.Supp.2d at 990–91. Here, as in *Smith,* any risk of serious harm would depend on individualized circumstances, such as the severity of the "nick" or "scratch" and whether the injured person lacked timely access to sanitizers and a

bandage in order to clean and treat the "wound" and prevent an infection from developing.

The Court thus concludes that no reasonable factfinder could find that the injuries resulting from the Chrome Defect are severe enough to present an unreasonable safety hazard. As a result, the Chrome Defect is not material and Defendant was not under an obligation to disclose the defect. Therefore, summary judgment with respect to Plaintiff's claim under the CLRA is **GRANTED.**

## B. Breach of the Implied Warranty of Merchantability

 Plaintiff also asserts that the Chrome Defect constitutes a breach of the implied warranty of merchantability under the Song–Beverly Act, Cal. Civ.Code § 1790 *et seq.* An implied warranty of merchantability provides that consumer goods are "fit for the ordinary purpose for which such goods are used." Cal. Civ. Code § 1791.1(a)(2). This Court earlier relied on *Isip v. Mercedes–Benz, USA, LLC,* for the proposition that a vehicle is fit for its ordinary purpose when it is "in safe condition and substantially free of defects." 155 Cal.App.4th 19, 27, 65 Cal. Rptr.3d 695 (2007). Thus, a defect need not render a vehicle inoperable to establish a breach of implied warranty. On the other hand, the Ninth Circuit recently affirmed the dismissal of a claim for breach of implied warranty where the alleged defect, unlike the defect in *Isip,* did not "drastically undermine[ ] the ordinary operation of the vehicle" and indeed failed to implicate the vehicle's operability at all. *See Troup v. Toyota Motor Corp.,* 545 Fed.Appx. 668, 669 (9th Cir.2013).

Similarly, the Chrome Defect did not impact the operability of Plaintiff's vehicle. Plaintiff and her husband drove the vehicle for approximately 4.5 years, starting in May 2009, and over 65,000 miles. Since the Chrome Defect must have manifested itself at least by June 2010, when Plaintiff's husband claims he first took the car to the dealership to complain about the defect, and Plaintiff did not replace the cup holder in the vehicle until on or around March 23, 2012 (the vehicle's gear shifter was never repaired or replaced while Plaintiff owned the car), Plaintiff and her husband operated the vehicle despite the presence of the defect for most of those 4.5 years. In fact, Plaintiff's husband freely admitted that had he felt any life-threatening risk to his personal safety he would not have driven the vehicle, but "if it's just going to cut [his] finger," then not only would he have driven the car but he actually did so for a couple of years. Given this admission as well as the vehicle's long operational history after the Chrome Defect became apparent, no reasonable factfinder could conclude that the defect "drastically undermined the ordinary operation of the vehicle."

Thus, the Court **GRANTS** summary judgment as to Plaintiff's breach of the implied warranty of merchantability claim.

## C. Violation of the Unfair Competition Law

 Plaintiff seeks relief under the UCL, Cal. Bus. & Prof.Code § 17200 *et seq.* "A cause of action under this section must be based on a predicate act involving a violation of some other statute." *Johnson v. JP Morgan Chase Bank,* 536 F.Supp.2d 1207, 1213 (E.D.Cal.2008). Because the Court grants summary judgment as to Plaintiff's claims under the CLRA and the Song–Beverly Act, there is no predicate act involving a violation of some other statute upon which Plaintiff can base her UCL claim.

Accordingly, summary judgment as to the UCL claim is **GRANTED.**

### D. Fraud

Finally, Plaintiff asserts a fraud claim for Defendant's failure to disclose the Chrome Defect. In California, a claim for fraudulent concealment consists of five elements: "(1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." *Kaldenbach v. Mutual of Omaha Life Ins. Co.*, 178 Cal.App.4th 830, 850, 100 Cal. Rptr.3d 637 (2009) (internal citations and quotations omitted).

Because this Court has found that no reasonable factfinder could conclude that the Chrome Defect is material, Plaintiff cannot satisfy the first element of this claim. With respect to the second element, absent a fiduciary relationship, "a duty to disclose may [ ] arise when a defendant possesses or exerts control over material facts not readily available to the plaintiff." *Jones v. ConocoPhillips*, 198 Cal.App.4th 1187, 1199, 130 Cal.Rptr.3d 571 (2011). Again, because this Court has found no triable issue as to the Chrome Defect's materiality, it also concludes that Defendant had no duty to disclose the Chrome Defect.

Accordingly, summary judgment as to the fraud claim is **GRANTED.**

---

## IV.

## CONCLUSION

In light of the foregoing, Defendant's motion for summary judgment as to all claims is **GRANTED.**[3] Plaintiff's motion for class certification is **DENIED** as moot. **IT IS SO ORDERED.**

---

**3.** In light of the Court's ruling, Plaintiff's *ex parte* applications to seal documents in support of her class certification motion and the parties' stipulated request that the Court continue the class certification briefing schedule and other trial-related dates and deadlines are DENIED as moot [Doc. ## 94, 136, 138].