Filed 2/26/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ANABELL RUIZ NUNEZ,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>FCA US LLC,<br><br>Defendant and Appellant. | B297453<br><br><br>(Los Angeles County<br>Super. Ct. No. BC644827) |
| ANABELL RUIZ NUNEZ,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>FCA US LLC,<br><br>Defendant and Appellant. | B299208<br><br>(Los Angeles County<br>Super. Ct. No. BC644827) |

APPEALS from a judgment and orders of the Superior Court of Los Angeles County. Daniel S. Murphy, Judge. Judgment and postjudgment order reversed and remanded; nonsuit order affirmed.

Rosner, Barry & Babbitt, Hallen D. Rosner, Michelle A. Cook; Strategic Legal Practices and Payam Shahian for Plaintiff and Appellant in No. B297453 and for Plaintiff and Respondent in No. B299208.

Gates, Gonter, Guy, Proudfoot & Muench, Matthew M. Proudfoot; Horvitz & Levy, Lisa Perrochet, John A. Taylor, Jr., and Peder K. Batalden for Defendant and Appellant.

———————————————

## SUMMARY

In a "lemon law" case involving a used car, the court gave the jury a special instruction, at the request of plaintiff and over defendant's objection, that if a defect existed within the warranty period, the warranty would not expire until the defect had been fixed. That instruction misstated the law and conflicted with another instruction given to the jury, CACI No. 3231, which correctly explains the continuation of warranties during repairs. The court erred in giving the special instruction, and the error was prejudicial. We reverse the judgment and remand for further proceedings.

We affirm the trial court's order granting a nonsuit on plaintiff's cause of action for breach of implied warranty. Defendant was the manufacturer of the car, not a distributor or dealer who sold the used car to plaintiff. Under the lemon law, only distributors and retail sellers, not manufacturers, are liable for breach of implied warranties in the sale of a used car where, as here, the manufacturer did not offer the used car for sale to the public.

Reversal of the judgment likewise requires reversal of the attorney fee award to plaintiff.

2

**FACTS**

On October 30, 2013, plaintiff Anabell Ruiz Nunez bought a used 2011 Jeep Patriot. The previous owner bought it as a new car on December 31, 2010. Defendant FCA US LLC (formerly known as Chrysler) manufactured the car and provided an express warranty for three years or 36,000 miles. Absent tolling of the warranty period, the three years expired on December 31, 2013, a few months after plaintiff bought the car.

More than two and a half years after plaintiff bought the car, on June 20, 2016, plaintiff had the car towed to the dealer for repairs after a harrowing incident on the freeway. The car started shaking and suddenly lost power, dropping from 65 to 10 miles an hour. (This is known as "safe mode" or "limp-in mode.") The car's mileage was then 51,465. The dealer replaced the throttle body and performed related programming and a road test.

The first owner of the car had brought the car to the dealer two years nine months earlier (September 25, 2013, at 21,774 miles), because the throttle warning light was on and "no power felt." The dealer replaced the throttle body on that occasion, too.

The 2013 throttle body replacement for the first owner had fixed the problem for the next 33 months. But about four months after the June 2016 throttle body replacement, on October 17, 2016, the same thing happened again. The dealer again replaced the throttle body and returned the car to plaintiff the next day. Two days later, on October 20, 2016, the same thing happened yet again. At this point, the dealer had replaced the throttle body once for the first owner and twice for plaintiff. This time, the dealer replaced the throttle body *connector*.

3

A few days later, on October 26, 2016, plaintiff telephoned Chrysler, at its "buyback" number, to request a buyback of her car. Chrysler did not agree to a buyback. Plaintiff filed this lawsuit on December 23, 2016.

A few months later, on March 28, 2017, the same problem occurred yet again. The dealer again replaced the throttle body connector. That was the last time plaintiff experienced the limp-in mode problem.

In her complaint, plaintiff alleged several causes of action under the Song-Beverly Consumer Warranty Act (Song-Beverly Act), popularly known as the lemon law. (Civ. Code, § 1790 et seq.) (All unspecified statutory citations are to the Civil Code.) The complaint alleged defendant failed to promptly replace the car or make restitution (§ 1793.2, subd. (d)(2)); failed to commence repair within a reasonable time and to complete repairs within 30 days (§ 1793.2, subd. (b)); and breach of the implied warranty of merchantability (§§ 1791.1, 1794).

Plaintiff alleged, among other things, the car "contained or developed . . . defects related to the throttle body" during the warranty period, and defendant was unable to repair the car to conform to the express warranties after a reasonable number of attempts but refused to replace it or make restitution. Plaintiff sought damages, civil penalties of twice the actual damages for willful violations, and attorney fees.

Plaintiff's theory of the case was (and is) that the source of the car's problem was an electrical component—the throttle body connector that defendant replaced on October 20, 2016, and again on March 28, 2017, and this defect existed (but was not diagnosed and fixed) when the first owner brought the car in for warranty

4

repairs on September 25, 2013, during the express warranty period.

At the close of plaintiff's case-in-chief, defendant moved for nonsuit on all causes of action. The court granted the motion as to plaintiff's claim for breach of implied warranty, finding that implied warranty obligations apply to distributors and sellers of used vehicles, not to manufacturers.

The trial court gave the jury two instructions relating to the continuation of defendant's express warranty during repairs. The court instructed with CACI No. 3231, as follows: "Regardless of what the warranty says, if a defect exists within the warranty period and the 2011 Jeep Patriot has been returned for repairs, the warranty will not expire until the defect has been fixed. [Plaintiff] must have notified [defendant] of the failure of the repairs within 60 days after they were completed. The warranty period will also be extended for the amount of time that the warranty repairs have not been performed because of delays caused by circumstances beyond the control of [plaintiff]." The CACI No. 3231 Directions for Use explain: "Give this instruction if it might appear to the jury from the language of an express or implied warranty that the warranty should have expired during the course of repairs. By statute, the warranty cannot expire until the problem has been resolved as long as the defendant had notice that the defect had not been repaired. (Civ. Code, § 1795.6(b).)"

Over defendant's objections, the court also gave a special instruction requested by plaintiff: "If a defect exists within the warranty period, the warranty will not expire until the defect has been fixed." (We will refer to this as plaintiff's special instruction.)

5

The jury returned unanimous special verdicts in favor of plaintiff. The jury found the car had a defect covered by the warranty that substantially impaired its use, value or safety; defendant failed to repair it after a reasonable number of opportunities; and defendant failed to replace or repurchase the vehicle. Plaintiff's damages were $15,126.33. The jury found defendant's failure to repurchase or replace the car was willful, and imposed a penalty of two times the damages. The jury also found defendant failed to begin repairs within a reasonable time, and failed to complete repairs within 30 days, and found the violation was willful. The jury awarded the same amounts in damages and penalties.

The court entered judgment for plaintiff in the amount of $45,378.99, plus costs and attorney fees, on February 11, 2019. Defendant filed motions for judgment notwithstanding the verdict and for a new trial. These were denied.

Defendant filed a timely notice of appeal from the judgment and the orders denying a new trial and JNOV. Plaintiff filed a cross-appeal from the judgment and all preceding orders.

Plaintiff filed a motion for attorney fees, costs and expenses totaling $383,758.02. The court awarded $179,510 in attorney fees to three law firms, plus $31,888.49 in costs. Defendant filed a timely appeal from the court's order.

We ordered the appeals consolidated for purposes of oral argument and decision.

## DISCUSSION

### 1. Defendant's Appeal

Preliminarily, we address plaintiff's contention we should find defendant forfeited its legal arguments for failure to comply with appellate rules for citation to the record in its statement of

6

the case.  (See, e.g., *Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856 ["If a party fails to support an argument with the necessary citations to the record, that portion of the brief may be stricken and the argument deemed to have been waived."].)  Here, defendant cited to large swathes of the reporter's transcript rather than to specific pages.  Defendant also improperly included the reporter's transcript in its appendix and omitted various required documents, including the judgment and certain opposition briefs and trial exhibits.  This prompted plaintiff to file her own respondent's appendix.

We certainly do not condone defendant's rule violations, but in this case, we do not believe forfeiture of legal arguments is necessary or appropriate.  Contrary to plaintiff's assertions, defendant does not seek reversal based on sufficiency of the evidence.  Defendant has presented a single issue—instructional error.  The errors in record citation and document omissions have not prevented or unduly complicated our appellate review of that claim.  Consequently, we will not deem any arguments forfeited, and turn to the merits of defendant's claim.

### a.     Express warranties and tolling

"The general rule is that an express warranty 'does not cover repairs made after the applicable time or mileage periods have elapsed.' " (*Daugherty v. American Honda Motor Co., Inc.* (2006) 144 Cal.App.4th 824, 830 (*Daugherty*).)  In *Daugherty*, a class action alleging breach of express warranty and violation of consumer protection laws, the court rejected the plaintiffs' claim that the warranty "covers any defect that 'exists' during the warranty period, no matter when or whether a malfunction occurs."  (*Id.* at p. 832; *ibid.* ["as a matter of law, in giving its promise to repair or replace any part that was defective in

7

material or workmanship and stating the car was covered for three years or 36,000 miles, [the defendant] 'did not agree, and plaintiffs did not understand it to agree, to repair latent defects that lead to a malfunction after the term of the warranty' "].)

The Song-Beverly Act specifies the duties of a manufacturer making an express warranty (§ 1793.2) and governs tolling of the warranty period (§ 1795.6), specifying exactly when and how the warranty period is tolled or extended. (The relevant text appears in full in the next footnote.)[1]

_____

[1] "(a) [¶] (1) Except as provided in paragraph (2) [governing hearing aids] **warranty period** relating to an implied or express warranty accompanying a sale . . . **shall automatically be tolled for the period from the date upon which the buyer** either (1) **delivers nonconforming goods to the manufacturer or seller for warranty repairs or service** or (2), pursuant to subdivision (c) of Section 1793.2 or Section 1793.22, notifies the manufacturer or seller of the nonconformity of the goods **up to, and including, the date upon which** (1) the repaired or serviced goods are delivered to the buyer, (2) **the buyer is notified the goods are repaired or serviced and are available for the buyer's possession** or (3) the buyer is notified that repairs or service is completed, if repairs or service is made at the buyer's residence. [¶] . . . [¶] (b) **Notwithstanding the date or conditions set for the expiration of the warranty period, such warranty period shall not be deemed expired if either or both of the following situations occur:** (1) after the buyer has satisfied the requirements of subdivision (a), the warranty repairs or service has not been performed due to delays caused by circumstances beyond the control of the buyer or (2) **the warranty repairs or service performed upon the nonconforming goods did not remedy the nonconformity for which such repairs or service was performed and the**

8

First, the warranty period is automatically tolled from the date on which a buyer delivers the car to the manufacturer or seller for warranty repairs, until the date on which the buyer is notified the car is repaired and available for the buyer's possession. (§ 1795.6, subd. (a)(1).)

Second, the warranty period shall not be deemed expired if the warranty repairs have not been performed due to delays beyond the control of the buyer. (§ 1795.6, subd. (b).)

Third, the warranty period shall not be deemed expired if the warranty repairs did not fix the defect for which the repairs were performed, *and* the buyer notified the manufacturer or seller of this failure within 60 days after the repairs were completed. (§ 1795.6, subd. (b).)

In sum, the warranty period is tolled or extended under only three circumstances: (1) the car is in the shop for warranty repairs (§ 1795.6, subd. (a)(1)), (2) there are delays in warranty repairs beyond the control of the buyer, and (3) upon notice from the buyer, given within 60 days of completion of warranty repairs, that those repairs did not solve the problem (§ 1795.6, subd. (b)). The statute provides no other circumstances under which the warranty is tolled or extended.

Section 1793.1 of the statute governs, among other matters, the form of express warranties (e.g., "simple and readily

---

**buyer notified the manufacturer or seller of this failure within 60 days after the repairs or service was completed.** When the warranty repairs or service has been performed so as to remedy the nonconformity, the warranty period shall expire in accordance with its terms, including any extension to the warranty period for warranty repairs or service." (§ 1795.6, subds. (a) & (b), boldface added.)

understood language"), and the information a manufacturer or retailer must give to consumers when they bring a product for warranty repairs or service, about their warranty rights and remedies.  Section 1793.1, subdivision (a)(2) (§ 1793.1(a)(2)) requires specific language on all work orders or repair invoices for warranty repairs.  The notice tells the buyer the three circumstances recited above under which the warranty period will be extended (§ 1795.6), and of a fourth right to replacement or refund if the defect has not been fixed after a reasonable number of attempts (§ 1793.2).  We recite below each of these four rights that must appear on the face of every work order or repair invoice:

First, "The warranty period will be extended for the number of whole days that the product has been out of the buyer's hands for warranty repairs."  (§ 1793.1(a)(2).)  This means the number of days a car is in the shop for repairs during the warranty period are added to the warranty period.  (§ 1795.6, subd. (a)(1).)

Second, "If a defect exists within the warranty period, the warranty will not expire until the defect has been fixed." (§ 1793.1(a)(2).)  This means if the car is in the shop for repairs during the warranty period, the dealer has to complete the repairs before returning the car to the owner, even if the warranty period expired while the car was in the shop.  (§ 1795.6, subd. (a)(1).)

Third, "The warranty period will also be extended if the warranty repairs have not been performed due to delays caused by circumstances beyond the control of the buyer, or if the warranty repairs did not remedy the defect and the buyer notifies the manufacturer or seller of the failure of the repairs within

10

60 days after they were completed." (§ 1793.1(a)(2).) This means if the car is in the shop for repairs during the warranty period but there are delays not caused by the buyer, such as when the dealer is waiting for delivery of parts, the dealer has to complete the repairs, even if the warranty period expired while the car was in the shop. And, if the repairs did not fix the problem, and if the buyer reports the failure within 60 days after the repairs are completed, the dealer must make further repairs under warranty, even if the warranty period has expired. (§ 1795.6, subd. (b).)

Fourth, "If, after a reasonable number of attempts, the defect has not been fixed, the buyer may return this product for a replacement or a refund subject, in either case, to deduction of a reasonable charge for usage. This time extension does not affect the protections or remedies the buyer has under other laws." (§ 1793.1(a)(2).) This means that the manufacturer must buy back or replace the car if repeated warranty repairs have not fixed the defect. (§ 1793.2.)

### b. Contentions and conclusions

The statutory requisites for tolling the warranty, as just described, are embodied in CACI No. 3231 (quoted, as it was given by the trial court, *ante* at p. 5). But the trial court also instructed the jury with plaintiff's special instruction, that "[i]f a defect exists within the warranty period, the warranty will not expire until the defect has been fixed." This is a sentence plucked from the notice to buyers quoted just above that section 1793.1(a)(2) requires on every repair invoice.

When read in context with the rest of the required notice, the sentence notifies the buyer the warranty period is extended while the product is in the shop for warranty repairs and until those repairs are completed, even if the stated period of the

11

warranty would otherwise expire during that time.  Taken out of context and standing entirely alone, the language suggests a far more expansive meaning.  The notice language required by section 1793.1(a)(2) describes the rights conferred by other sections of the statute, including section 1795.6 on tolling or continuation of the warranty period.  Section 1793.1(a)(2) does not expand those rights or create new rights.

Well-established rules of statutory construction do not allow us to read a statutory provision in isolation, and a jury instruction cannot stand when it is based on an erroneous construction of statutory language.  We cannot imagine the Legislature would, in a provision prescribing the language for notice to consumers, extend warranties beyond the terms of a statutory provision (§ 1795.6) that is specifically directed to that point.  Nor does any other construction of the notice provision comport with the law of express warranty.  (See *Daugherty, supra,* 144 Cal.App.4th at p. 832 [express warranty did not "cover[] any defect that 'exists' during the warranty period, no matter when or whether a malfunction occurs"].)

The only authorities discussing the section 1793.1(a)(2) sentence at issue are federal cases that align with our analysis. (See, e.g., *Yi v. BMW of North America, LLC* (C.D.Cal. May 24, 2018, No. 2:17-cv-06467-SVW) 2018 U.S.Dist.Lexis 171313, pp. *25–*29 [rejecting, under several canons of statutory construction, the plaintiff's claim that the sentence in section 1793.1(a)(2) tolled the expiration of the express warranty]; see also *Schick v. BMW of North America, LLC* (C.D.Cal. Sept. 27, 2018, No. 5:17-cv-02512-VAP-KKx) 2018 U.S.Dist.Lexis 223690, p. *15 [purpose of section 1793.1 "is to ensure that manufacturers and retailers set forth their

warranties in 'simple and readily understood language,' [§ 1793.1(a)(1)], and it does not create the bounds of express warranties"]; *Koeper v. BMW of North America, LLC* (C.D.Cal. Sept. 14, 2018, No. LACV 17-6154-VAP (JPRx)) 2018 U.S.Dist.Lexis 226156, p. *6 [noting that the plaintiff "has taken § 1793.1(a)(2) out of context," and "to read this provision in the manner Plaintiff urges would render moot the other provision of the statute pertaining to the tolling of express warranties" (citing *Yi*)].)

There is no support in the law for instructing the jury that if a defect exists within the warranty period, the warranty continues in perpetuity until the defect has been diagnosed and fixed. It was error to give the special instruction, an incomplete and misleading statement that does not comport with the law of express warranty or with the lemon law provision on tolling. The proper instruction was CACI No. 3231.

Plaintiff makes several other arguments, all similarly misguided. One is that defendant treated the warranty as extended by paying all the dealer's claims for warranty reimbursement for the repairs performed outside the warranty period. Plaintiff cites no legal authority for the proposition, in essence, that a manufacturer may be estopped from relying on the terms of an express warranty, simply because its dealer mislabeled the repairs as under "warranty" and the manufacturer paid the dealer's warranty claims. Nor did plaintiff request a jury instruction that the stated term of an express warranty could be extended in this fashion.

Another contention is that any error in the instructions was invited by defendant, who "advocated for an instruction based on the vaguely worded CACI 3231." Defendant requested, and the

13

court instructed the jury with CACI No. 3231, which correctly states the law. There was no error in giving CACI No. 3231. The error was in giving plaintiff's special instruction, to which defendant objected. There was no "invited error" by defendant.

Still another unavailing argument is that the special instruction did not conflict with CACI No. 3231. That is wrong, because the special instruction did not tell the jury that plaintiff must prove an owner gave notice within 60 days that repairs performed during the warranty period did not remedy the defect, as section 1795.6 plainly does.

Plaintiff insists that notice is only required to toll an express warranty "where the defect has been 'fixed' and the completed 'repair' fails"—and not where the defendant "replaced the wrong part" and thus "left a defect unrepaired." Under plaintiff's theory, the warranty would never expire unless a repair performed under warranty forever foreclosed the possibility of a recurring malfunction, whether the malfunction was caused by a new problem or by a latent condition that was not diagnosed when the in-warranty repair seemed to have fixed the problem. This ignores the requirement that the owner give notice within 60 days that an in-warranty repair did not resolve a malfunction.

Here, the September 2013 repair for the previous owner *did* resolve the malfunction that caused her to seek warranty repairs, and accordingly no notice to the contrary was given. Defendant's repair of the limp-in mode problem in 2013 by replacing the throttle body resolved the problem for two and a half years after the expiration of the stated term of the warranty. The defect in the wiring connector was not diagnosed until years after the warranty expired. *Daugherty* tells us that a latent defect does not extend the term of an express warranty.

14

(*Daugherty, supra,* 144 Cal.App.4th at p. 832 [manufacturer who gave a three-year or 36,000-mile warranty did not agree " 'to repair latent defects that lead to a malfunction after the term of the warranty' "].)

In the end, plaintiff's contentions consistently reduce themselves to the proposition that we should interpret the statute in a way that protects the interests of consumers, in accordance with its purpose.  Of course, we know the Song-Beverly Act " 'is manifestly a remedial measure, intended for the protection of the consumer; it should be given a construction calculated to bring its benefits into action.' " (*Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 990.)  But that does not mean we may disregard " ' "the actual words of the statute," ' " or fail to give them " ' "a plain and commonsense meaning." ' " (*Ibid.*)  Here, that meaning is clear:  section 1795.6 governs tolling of the warranty period, section 1793.1(a)(2) does not expand the circumstances under which the warranty period may be tolled, and CACI No. 3231 explains the conditions prescribed by section 1795.6 that continue an express warranty during repairs.

The error in giving the special instruction was prejudicial.  Plaintiff's counsel told the jury it was the most important instruction the judge gave, and the jury should find the warranty continued from the first throttle body repair through the last throttle body connector repair.  The special instruction improperly allowed the jury to conclude the warranty did not expire until years after its stated expiration, without considering the statutory conditions for extending the warranty that are prescribed in section 1795.6.  It is reasonably probable that, if the jury had been instructed only with CACI No. 3231, it would have reached a different verdict.

15

## 2. Plaintiff's Cross-appeal

Plaintiff asks the court, in the event of a reversal of the judgment, to reverse the trial court's order granting a nonsuit on plaintiff's implied warranty claim. We conclude the trial court's order was correct.

"The rule is that a trial court may not grant a defendant's motion for nonsuit if plaintiff's evidence would support a jury verdict in plaintiff's favor." (*Campbell v. General Motors Corp.* (1982) 32 Cal.3d 112, 117–118.) In this case, plaintiff's implied warranty claim fails as a matter of law, because in the sale of used consumer goods, liability for breach of implied warranty lies with distributors and retailers, not the manufacturer, where there is no evidence the manufacturer played any role in the sale of the used car to plaintiff.

We begin with a few definitions.

A manufacturer is an entity "that manufactures, assembles, or produces consumer goods." (§ 1791, subd. (j).)

A distributor is an entity "that stands between the manufacturer and the retail seller in purchases, consignments, or contracts for sale of consumer goods." (§ 1791, subd. (e).)

A seller or retailer is an entity "that engages in the business of selling or leasing consumer goods to retail buyers." (§ 1791, subd. (*l*).)

Section 1791, subdivision (a) defines "consumer goods" as "any new product" that meets specified conditions.

Section 1791.1 defines implied warranties (§ 1791.1, subds. (a) & (b)), and states implied warranties for new consumer goods (*id.,* subd. (c)) are coextensive with an express warranty, but in no event last less than 60 days or more than one year following the sale of the new product. (We deny defendant's

16

request for judicial notice of a letter among the legislative history of section 1791.1 as it is irrelevant to our analysis.)

Section 1795.5 governs the obligations "of a distributor or retail seller of used consumer goods" in a sale in which an express warranty is given.  These obligations, with stated exceptions, are "the same as that imposed on manufacturers" under the Song-Beverly Act.  (§ 1795.5.)  One of the exceptions, for example, is the implied warranty for a used product is coextensive with an express warranty but lasts not less than 30 days and not more than three months after the sale of the used product.  (*Id.,* subd. (c).)

It is evident from these provisions that only distributors or sellers of *used* goods—not manufacturers of *new* goods—have implied warranty obligations in the sale of *used goods*.  (See § 1795.5.)  As one court has put it, the Song-Beverly Act provides similar remedies (to those available when a manufacturer sells new consumer goods) "in the context of the sale of used goods, except that the manufacturer is generally off the hook."  (*Kiluk v. Mercedes-Benz USA, LLC* (2019) 43 Cal.App.5th 334, 339 (*Kiluk*), citing § 1795.5; see *id.* at p. 337 [Song-Beverly Act "generally binds only distributors and retail sellers in the sale of used goods"].)

Of course, as *Kiluk* explains, "the assumption baked into section 1795.5 is that the manufacturer and the distributor/retailer are distinct entities.  Where the manufacturer sells directly to the public, however, it takes on the role of a retailer."  (*Kiluk, supra,* 43 Cal.App.5th at p. 340.)  *Kiluk* involved a defendant manufacturer that "issu[ed] an express warranty on the sale of a used vehicle" that "would last for one year from the end of the new car warranty."  (*Id.* at p. 337.)  In

17

*Kiluk*, the manufacturer "partnered with a dealership to sell used vehicles directly to the public by offering an express warranty as part of the sales package," and by doing so, "stepped into the role of a retailer and was subject to the obligations of a retailer under section 1795.5." (*Id.* at p. 340.)

This is not such a case. Here, plaintiff presented no evidence that defendant was "a distributor or retail seller of used consumer goods" (§ 1795.5), or in any way acted as such.

Plaintiff insists there *is* evidence that defendant was both the manufacturer and the distributor of the car. She points to two exhibits in the record. One shows when the new car was sold to the first owner on December 31, 2010, there were 56 miles on the odometer. The other shows that when the dealer performed "new vehicle prep" on November 16, 2010, the car had zero miles on the odometer, and the claim was paid. Plaintiff contends this is evidence defendant "was the 'distributor' of the Vehicle." We do not see how evidence that defendant paid the dealer for "new vehicle prep" with zero miles on the odometer, and the car had 56 miles when the first owner bought it new in 2010, could possibly show that defendant was "a distributor . . . of used consumer goods" under section 1795.5. It is common for a new car to be test-driven by potential buyers who, for whatever reason, do not buy the car.

Plaintiff then tells us, alternatively, that liability with respect to used goods is the same for manufacturers, distributors and retail sellers. No authority is cited, and *Kiluk* tells us otherwise. (*Kiluk, supra,* 43 Cal.App.5th at p. 339 ["the manufacturer is generally off the hook"].)

**3. Attorney Fees**

Because the judgment for plaintiff must be reversed, so too must the order awarding attorney fees to plaintiff.

**DISPOSITION**

The judgment and postjudgment order are reversed, the nonsuit order is affirmed, and the cause is remanded for further proceedings.  Defendant shall recover costs of appeal.


GRIMES, J.


WE CONCUR:


BIGELOW, P. J.


STRATTON, J.